UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

STEPHEN GUAJARDO and                                             Case No. 19-10540-ta13
ROBERTA GARCIA-GUAJARDO,

    Debtors.

## OPINION

Ron Holmes replaced Debtors' first attorney on April 14, 2019, represented Debtors for about four months, and withdrew. During his tenure, Mr. Holmes and his legal assistant spent about 40 billable hours on the case, resulting in a fee application (including gross receipts tax and costs) of about $9,200. Debtors object that this is unreasonably high and should be reduced. Having reviewed the matter in some detail, the Court will award Mr. Holmes fees, taxes, and costs of $9,006.73.

## I.  FACTS

The Court finds:[1]

Debtors are married and live in Belen, New Mexico. Mr. Guajardo works offshore about three weeks in every month.

Debtors filed four bankruptcy cases in the Eastern District of Virginia. In 1991 they filed a chapter 7 case and received a discharge. They filed three pro se chapter 13 cases in quick succession in late 2015 and early 2016, all of which were dismissed without a confirmed plan. The bankruptcy judge who dismissed the third case had concerns about the good faith of these cases.

---

[1] The Court took judicial notice of the docket in the main case and the associated adversary proceeding. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

Debtors filed this chapter 13 case on March 13, 2019. They were represented by Jason Cline. Mr. Cline, who had just been retained, was forced to file an "emergency" petition, without bankruptcy schedules, a Statement of Financial Affairs ("SOFA"), or a chapter 13 plan. The immediate purpose of the filing was to stay a state court hearing on a motion filed by Alicia Garcia[2] to enjoin Debtors from interfering in a sale of a house in Belen, New Mexico.

The petition filing had its intended effect. However, Ms. Garcia filed an adversary proceeding against Debtors on March 25, 2019, seeking injunctive relief and a declaratory judgment. The Court held an emergency hearing in the adversary proceeding on March 27, 2019. At the end of the hearing, the Court ordered Debtors to release a lis pendens they had filed on the house. Debtors did not file the release by the deadline. The Court set a show cause hearing for March 28, 2019. Before the show cause hearing, Debtors released the lis pendens.

On March 27, 2019, Mr. Cline moved to withdraw as Debtors' counsel, citing difficulty communicating with Debtors and getting them to comply with the Court's order. The Court granted Mr. Cline's motion on April 2, 2019.

On April 11, 2019, Debtors signed a "Chapter 13 Bankruptcy Fee Agreement" with attorney Ron Holmes, agreeing to pay him $275 per hour and his legal assistant $110 per hour.[3]

---

[2] Roberta Garcia-Guajardo's stepmother.

[3] The fee agreement included the following list of minimum attorney time Mr. Holmes charges for certain activities:

| Activity | Minimum |
|---|---|
| Draft of any letter or correspondence | 0.2 hrs minimum |
| Receipt and review of any letter or incoming email | 0.2 hrs minimum |
| Completed telephone calls | 0.2 hrs minimum |
| Message calls | 0.1 hrs minimum |
| Telephonic Court appearance | 0.5 hrs minimum |
| In Person Court Appearance | 1.0 hrs minimum |
| Draft of Petition and Schedules (paralegal) | 4.0 hrs minimum |
| Receive and review objections to plan | 0.2 hrs minimum |
| Motion and Request for Hearing package | 1.5 hrs minimum |
| Settlement Agreement prepared | 2.0 hrs minimum |
| Office consultation or conference | 0.5 hrs minimum |

When the Debtors and Mr. Cline parted company, no substantial work had been done on Debtors' schedules, SOFA, or plan. Mr. Holmes prepared these documents. The circumstances required Mr. Holmes to file a third motion for an extension of deadline to file the documents.

Mr. Holmes drafted and filed an answer to Alicia Garcia's adversary proceeding complaint on April 26, 2019. He filed Debtors' bankruptcy schedules, SOFA, chapter 13 plan, and an amended mailing list on May 10, 2019.

Mr. Holmes represented Debtors at their § 341[4] meeting on May 15, 2019,[5] and at a June 4, 2019, preliminary hearing on confirmation of their chapter 13 plan. Mr. Holmes also represented Debtors at a scheduling conference in the adversary proceeding.

Mr. Holmes reviewed proofs of claim filed in the case, worked on Debtors' missing tax returns, negotiated plan confirmation issues with the chapter 13 trustee, and worked on the adversary proceeding.

Ultimately, Mr. Holmes also got crosswise with Debtors. He moved to withdraw on July 24, 2019, citing a failure of communication and compliance leading to a breakdown in the attorney/client relationship. The Court granted the motion to withdraw over Debtors' objection on August 19, 2019. Mr. Holmes's representation lasted a little over four months. He filed a fee application on August 14, 2019, to which he attached all billing entries.

Debtors retained Michael Daniels as counsel on or about September 3, 2019. Debtors filed a pro se objection to Mr. Holmes's fee application on September 5, 2019.

Mr. Holmes originally asked for total fees, costs, and taxes of $9,810.40. After he adjusted

---

| Out of office travel | 0.5 hrs minimum |
|---|---|
| Fee application | 1.0 hrs minimum |

[4] All references are to 11 U.S.C. unless otherwise indicated.
[5] Mr. Holmes billed time for Debtors' first § 341 meeting, scheduled for April 17, 2019, but Debtors had car trouble and did not appear.

the request for two billing errors, he sought approval of $9,172.85.[6]

## II. DISCUSSION

A. Section 330(a).

11 U.S.C. § 330(a) provides:

(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to . . . a professional person employed under section 327 . . .
  (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
  (B) reimbursement for actual, necessary expenses.
. . . .
(3) In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–
  (A) the time spent on such services;
  (B) the rates charged for such services;
  (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
  (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
  (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
  (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
. . . .
(4)(B) In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

---

[6] $9,810.40 may have been a typographical error; the fee bills totaled $9,608.67. This amount was further reduced due to a duplicate entry for $275 and a discrepancy between the legal assistant's rate in the fee agreement ($110/hr) and the bills ($125/hr). Mr. Holmes agreed to strike the duplicate entry and bill the legal assistant's time at the lower rate. By the Court's calculations, $9,172.85 consists of $8,170.25 in fees, $643.40 in gross receipts taxes (at 7.875%), and $359.20 in costs.

-4-
Case 19-10540-t13    Doc 129    Filed 02/14/20    Entered 02/14/20 15:30:45 Page 4 of 10

The key questions are whether the professional services were necessary and beneficial to the bankruptcy estate and whether the fees charged for those services are reasonable in amount. *In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993); *In re Schupbach Investments, LLC*, 2014 WL 6680122, at *8 (10th Cir. B.A.P.); *see also In re KOBA Limited Partnership*, 2019 WL 5584901, at *3 (Bankr. D.N.M.) (citing additional authority for same proposition); *In re Hungry Horse, LLC*, 2017 WL 3638182, at *2–*3 (Bankr. D.N.M.) (same); *In re Weaver*, 2011 WL 867136, at *3 (Bankr. D.N.M.) (same). In chapter 12 and 13 cases, the benefit can be to the debtor rather than the estate. *See, e.g., In re Williams*, 378 B.R. 811, 823 (Bankr. E.D. Mich. 2007) (§ 330(a)(4)(B) is an exception to the general rule that professionals' services must benefit the estate to be compensable); *In re Argento*, 282 B.R. 108, 116 (Bankr. D. Mass. 2002) (same).

B.      Debtors' Objections to the Fee Application.

In their objection and at the final hearing, Debtors principally complained about Mr. Holmes's demeanor toward and interactions with them. They raised only a few specific objections to his fee application.

First, Debtors and Mr. Holmes disagree about whether he agreed to offer Debtors a free initial consultation (Mr. Holmes billed one hour for an initial conference on April 11, 2019). The Court finds that both sides testified credibly on this point, and that likely there was a misunderstanding. Mr. Holmes testified that he sometimes offers free initial consultations. However, he does not do so when asked to take on a case post-petition because he cannot get a retainer (post-petition, all cash is estate property). In exchange for agreeing to represent debtors without a retainer, Mr. Holmes charges for the initial consultation. The fee charged for the initial conference will be allowed.

Second, Debtors argued that it was excessive for Mr. Holmes to spend approximately ten hours on bankruptcy schedules when Debtors themselves had spent two to three hours on the material. This argument is unpersuasive; preparing a good set of schedules and a SOFA is technical work, and Debtors are not lawyers. *See KOBA*, 2019 WL 5584901, at *5 (overruling debtor's principal's objection that legal work at real estate closing could have been handled competently by a broker at a fraction of the cost). Debtors' version of the paperwork is not in evidence, but the schedules ultimately filed by Mr. Holmes are substantial and appear to be thorough. Debtors listed 81 unsecured creditors in their Schedule E/F. Mr. Holmes filed a substantially longer amended mailing list. Mr. Holmes testified that he took the time to include creditors from Debtors' prior dismissed bankruptcy cases to make sure Debtors received the full benefit of their "fresh start." The Court finds that the time billed for work on Debtors' schedules and SOFA was reasonable and necessary to the administration of this case.

Third, Debtors complain about the time Mr. Holmes billed for the April 17, 2019 § 341 meeting. Ms. Garcia-Guajardo missed the meeting because of car trouble. Apparently she and Mr. Holmes agreed to meet after the meeting, which had to be rescheduled. Through miscommunication, they missed each other. Regardless of fault, which the Court does not assign, it does not appear Mr. Holmes billed for any time other than that which he spent preparing for and attending the § 341 meeting.[7]

---

[7] Mr. Holmes billed 1.0 hours for attending the § 341 meeting. This is the "minimum attorney time charged" for an "in person court appearance." The Court disapproves of minimum charges; flat fees, perhaps, are acceptable if otherwise reasonable, but charging clients the greater of actual time or an arbitrary "minimum time" is unreasonable. *Cf. In re First State Bancorporation*, 2014 WL 1203141, at *10 n.27 (Bankr. D.N.M.) (tasks taking less time than the minimum billing increment should not be billed at that minimum). Nevertheless, in this instance Mr. Holmes testified that one hour was his actual time spent. Furthermore, it does not appear that Mr. Holmes or his legal assistant used the minimum charges. For example, Mr. Holmes has a number of .1 hour entries that would have been .2 under the minimum charges table.

Finally, Debtors argued that Mr. Holmes billed too much time for a meeting on May 8, 2019. The fee bills, however, indicate that Mr. Holmes not only billed for the meeting but also to revise the schedules and SOFA after the meeting. Mr. Holmes's testimony corroborates this.

Debtors' specific objections to Mr. Holmes's fee application are overruled.[8]

C. <u>Clerical Work</u>.

One exception to the necessity/benefit analysis is clerical work. While necessary in every legal proceeding, clerical work cannot reasonably be passed onto clients or the estate and should instead be absorbed by the firm as overhead. *In re CF&I Fabricators of Utah, Inc.*, 131 B.R. 474, 489 (Bankr. D. Utah 1991); *In re Lady Baltimore Foods, Inc*, 2004 WL 2192368, at *1 (Bankr. D. Utah); *Weaver*, 2011 WL 867136, at *4; *In re Guzman*, 2009 WL 607401 (Bankr. D.N.M.). Filing and serving documents on the Court through CM/ECF is non-compensable clerical work. *Weaver*, 2011 WL 867136, at *4. Further, in the event of any dispute or lack of clarity as to the nature of a billing entry, "[t]he party requesting compensation from the estate bears the burden of demonstrating that the requested fees are reasonable." *Id.* at *3.

Here, there are several entries of 0.2 hours where Mr. Holmes's legal assistant "[f]inalize[d], file[d], and serve[d]" documents on the Court.[9] Additionally, there is an entry where the legal assistant "[c]orresponde[d] with admin regarding file set up." The Court is unable to determine what portion of these entries, if any, may be charged to the estate. Mr. Holmes did not

---

[8] Debtors had additional complaints about Mr. Holmes, but the Court was not able to tie them to specific billing entries. Consequently, Debtors' other complaints will be addressed in the Court's analysis of the reasonability of Mr. Holmes's fees, below.

[9] The Court has noted an increase in billing entries in chapter 13 cases that seek to combine potentially legal or paraprofessional work, such as document finalization, with the clerical work of filing and serving documents. Debtor's counsel must be careful not to bill the estate for clerical work.

carry his burden concerning these particular fees, and they will therefore be disallowed in the amount of $154 ($110 x 1.4 hrs).

D.     The *Johnson* and § 330(a)(3) Factors.

Section 330(a)(3) lists six factors to consider when evaluating the reasonableness of fees. The Tenth Circuit has taken other factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See In re Market Center East Retail Property, Inc.*, 730 F.3d 1239, 1249 (10th Cir. 2013) ("[B]ankruptcy court[s] must consider the § 330(a)(3) and *Johnson* factors in evaluating whether a proposed fee amount is reasonable"). The *Johnson* factors are

(1) The time and labor required;
(2) The novelty and difficulty of the questions;
(3) The skill requisite to perform the legal service properly;
(4) The preclusion of other employment due to acceptance of the case;
(5) The customary fee;
(6) Whether the fee is fixed or contingent;
(7) Time limitations imposed by the client or the circumstances;
(8) The amount involved and the results obtained;
(9) The experience, reputation, and ability of the attorneys;
(10) The "undesirability" of the case;
(11) The nature and length of the professional relationship with the client; and
(12) Awards in similar cases.

*Market Center East*, 730 F.3d at 1247; *KOBA*, 2019 WL 5584901, at *4; *Hungry Horse*, 2017 WL 3638182, at *3. The Court weighs the § 330(a)(3)/*Johnson* factors as follows:

| Factor | Discussion |
|---|---|
| § 330(a)(3)(A): Time spent | Mr. Holmes billed about 22 hours in this case; his legal assistant billed about 19.5 hours. That seems high at first blush. The Court broke down the time spent according to task: Schedules and SOFA: 14.55 hours ($2,186.25); Plan: 7.45 hours ($1,883.75); § 341 meeting: 2.85 hours ($701.25); Adversary proceeding: 9.15 hours ($1,658.25); and Motions: 7.35 hours ($1,740.75). After reviewing the filings in this case and the adversary proceeding and comparing them to the fee bills, the Court finds that the time spent is reasonable. |

-8-

| | |
|---|---|
| § 330(a)(3)(B): Rates charged | Mr. Holmes charged $275 per hour for his time and $110 per hour for his legal assistant. These rates are reasonable, given their experience. |
| § 330(a)(3)(C): Necessary/beneficial | Aside from the slight amount of time billed for clerical work, Mr. Holmes's actions were necessary and beneficial to the estate and/or Debtors. |
| § 330(a)(3)(D): Timeliness | Mr. Holmes's work was timely. For example, Mr. Holmes was able to get an extension of time to prepare and file the schedules, SOFA, and plan; reschedule the § 341 meeting; and answer the adversary proceeding complaint. |
| § 330(a)(3)(E): Skill/experience | Mr. Holmes has been practicing bankruptcy law for over 20 years. He has the skill to handle this case. |
| § 330(a)(3)(F): Customary compensation in non-bankruptcy cases | Mr. Holmes's rates are comparable to attorneys with his level of experience practicing outside bankruptcy. |
| *Johnson* factor ("JF") 1: Time and labor required? | As stated above, the time spent on the case was reasonable. |
| JF 2: Novelty and difficulty of the questions? | The issues in the bankruptcy and adversary proceeding were somewhat novel, viz. the dispute raised by Alicia Garcia in her adversary proceeding complaint. |
| JF 3: Skill requisite to perform the legal service properly? | Mr. Holmes has the skill to handle this case. |
| JF 4: Preclusion of other employment due to acceptance of the case? | There is no evidence in the record that the representation precluded Mr. Holmes from taking other work. |
| JF 5: Customary fee? | Apart from the "minimum attorney time charged" (discussed above), Mr. Holmes's fees are customary. |
| JF 6: Whether the fee is fixed or contingent? | The hourly rate was fixed. |
| JF 7: Time limitations imposed by the client or circumstances? | Debtors' filings were deficient when Mr. Holmes entered his appearance. He worked to extend the deadline to file required documents in the bankruptcy and adversary proceeding. He necessarily worked quickly to prevent dismissal of the Debtors' case. |
| JF 8: Amount involved and results obtained? | Without Mr. Holmes's intervention, Debtors' case likely would have been dismissed for deficient filings and failure to make plan payments. Based on the representations made to the Court by Debtors' current counsel and counsel for Alicia Garcia, the adversary proceeding likely will be settled, paving the way to confirmation of Debtors' chapter 13 plan. That would be a good result. It is impossible to apportion responsibility for the result among Debtors' three lawyers, but Mr. Holmes is entitled to partial credit. |
| JF 9: Experience, reputation, and ability of the attorneys? | Mr. Holmes is experienced and able. He has an excellent reputation. |

| | |
|---|---|
| JF 10: Undesirability of the case? | Given the difficulty Debtors had with Mr. Cline and Mr. Holmes, together with other evidence in the record, the Court concludes that this case was somewhat undesirable. |
| JF 11: Nature and length of professional relationship with the client? | Not applicable. |
| JF 12: Awards in similar cases? | It is difficult to say what a "similar" case might be. Simple chapter 13 cases result in attorney fees of between $3,000-$5,000. More difficult cases cost more, sometimes much more. There is no good way to compare this case to another complicated case. The Court finds, however, that the approved fees in this case are comparable to approved fees in equally difficult cases. |

Overall, the *Johnson*/§ 330(a)(3) factors weigh decidedly in favor of allowing Mr. Holmes's fee application in the in the amount of $8,016.25 (fees), $631.28 (tax), and $359.20 (costs), for a total allowance of $9,006.73.

III. CONCLUSION

Debtors' objection was not frivolous; the Court understands why they thought $9,200 was too much for Mr. Holmes's work in the case. Having heard Mr. Holmes's defense of his fee application, however, and having examined the docket and the fee bills, the Court concludes that, with the relatively minor adjustments discussed above, the fees charged are necessary, beneficial, and reasonable. The Court will enter a separate order consistent with this opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: February 14, 2020
Copies to: Counsel of Record