UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

STEPHEN GUAJARDO and                                              Case No. 19-10540-ta13
ROBERTA GARCIA-GUAJARDO,

     Debtors.

**<u>OPINION</u>**

Before the Court is the final fee application of Michael Daniels, who represented Debtors from September 2019 through July 2020. Daniels was Debtors' third lawyer in this chapter 13 case. The third time was not a charm; Daniels filed an opposed motion to withdraw from his representation in June 2020, which the Court granted. In his fee application Daniels seeks approval of $12,531.79 in fees, expenses, and taxes. Debtors objected. Following a hearing on the fee application and being sufficiently advised, the Court will grant the application.

I.       <u>FACTS</u>[1]

The Court incorporates by reference the facts from *In re Guajardo*, 2020 WL 762828 (Bankr. D.N.M.) ("*Guajardo I*"). The Court additionally finds:

In 2014, Debtors moved from Virginia to New Mexico to help care for Ms. Garcia-Guajardo's father, Joel Garcia, and her stepmother, Alicia Garcia.

Debtors could not qualify for a mortgage when they moved to New Mexico, so the Garcias bought a house for them[2] down the street from where the Garcias live.[3] The Garcias then sold the

---

[1] The Court takes judicial notice of its docket in this case. *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) ("[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record.") (*abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001)).
[2] The purchase price was $161,000.
[3] The street address is 2017 Embarcadero Ct., Belen, NM 87002.

house to Debtors under a real estate contract with a $50,000 down payment and a five year "balloon" payment.

Mr. Garcia's health declined in 2018, coincident with increasing conflict between Ms. Garcia and Ms. Garcia-Guajardo. Debtors filed a petition for appointment of a guardian and conservator for Mr. Garcia on July 10, 2018,[4] without Ms. Garcia's knowledge. Debtors stopped paying on the real estate contract at about the same time. This led Ms. Garcia to declare the Debtors in default, terminate the contract, and ask Debtors to move out. In turn, Debtors filed a Complaint for Declaratory Judgment, Preliminary and Permanent Injunction and Breech [sic] of Contract, Defamation, Slander and Emergency Stay of Eviction Pending Hearing.[5] In connection with this action, Debtors filed an notice of lis pendens on the Garcias' house, even though the house was not an issue in the suit.

Debtors filed this chapter 13 case on March 13, 2019, as a "save-the-house" bankruptcy. Ms. Garcia promptly filed an adversary proceeding against Debtors on March 25, 2019, laying out the history of the dispute between the parties, asking the Court to declare the real estate contract terminated, and seeking the immediate release of the notice of lis pendens. On March 27, 2019, the Court ordered Debtors to release the lis pendens.

Daniels has done a lot of work in this case. He filed Debtors' first amended chapter 13 plan, which appears to be confirmable. The chapter 13 trustee projects that the amended plan, if confirmed, would pay creditors 100%. Daniels represented Debtors in their objections to their first and second attorneys' fee applications.[6] Most importantly, Daniels settled the dispute with Ms.

---

[4] Case No. D-1314-PQ-2018-00058, filed in the Thirteenth Judicial District Court, State of New Mexico. The matter is ongoing. Eventually a guardian was appointed for Mr. Garcia. The guardian is not a party in the proceedings.
[5] No. D-1314-CV-2018-01550, filed in the Thirteenth Judicial District, State of New Mexico.
[6] Debtors settled with their first attorney, Jason Cline, the day of the final hearing on his fee application.

Garcia, removing the largest impediment to confirmation. As part of the settlement, Daniels arranged for Debtors to pay off the real estate contract. In return, Ms. Garcia dismissed her adversary proceeding and withdrew her objection to Debtors' discharge. Daniels also obtained a court order authorizing Debtors to borrow $75,000 to fund their settlement with Ms. Garcia. Finally, Daniels succeeded in reducing the IRS claim from $460,763.00 to $65,509.12.

During his representation of Debtors, Daniels communicated with them frequently, usually by email. Daniel's billing records reflect about 185 he sent to Debtors.

Daniels moved to withdraw from representing Debtors on June 3, 2020, stating that "the attorney-client relationship has deteriorated to the point where the undersigned is unable to effectively represent Debtors." Debtors objected to the motion. They argued that it would cause irreparable harm for them to have to find a fourth bankruptcy lawyer.[7] Debtors also listed grievances concerning Daniels handling of their case. Debtors failed to appear at a preliminary hearing on Daniels' motion to withdraw, so the Court entered a default order granting the motion.

Daniels filed his final fee application a week after his motion to withdraw. Debtors objected, realleging the problems set out in their objection to the withdrawal motion and also arguing that they could have kept their house without filing for bankruptcy if Daniels had advised them of that option.

The Court held a preliminary hearing on the fee application on August 4, 2020. At the hearing, the parties told the Court that they did not wish to present evidence at a final hearing. The Court decided that further legal argument would not be useful, so it took the fee application and objection under advisement.

Attached to the application are copies of Daniels' fee bills. Daniels billed time in tenth-of-

---

[7] The Court discussed Debtors' disputes with prior counsel in *Guajardo I* at *1–*2.

an-hour increments. His billing rate is $250/hr., but he only billed Debtors $200/hr. for the first two months of his representation. He did not bill for any paralegal work or work done by other lawyers. His rate for copies is $.15/page. He billed postage at cost. Daniels did not charge Debtors for Westlaw or other legal research time.

Daniels apparently has a billing policy of a .2 hour minimum charge. The Court prefers a .1 minimum charge; a lot can be accomplished in six minutes and it is not right to charge twelve minutes of time for six minutes of work. In this case, however, it appears Daniels rendered services commensurate with his minimum charge. For example, a November 22, 2019, entry, "Draft emails (3) to clients," was billed at .2 hours. There are many similar entries. Overall, the Court does not have the impression that Daniels billed for more time than he spent on the case. Daniels has the reputation of billing reasonably, even frugally, and his fee bills in this case are consistent with that.

## II.        DISCUSSION

A.        Section 330(a).[8]

The Court's analysis of the legal requirements to authorize fees is unchanged from its decision in *Guajardo I*. 11 U.S.C. § 330(a) provides:

> (1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to . . . a professional person employed under section 327 . . .
>       (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>       (B) reimbursement for actual, necessary expenses.
> . . . .
> (3) In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–
>       (A) the time spent on such services;
>       (B) the rates charged for such services;

---

[8] All statutory references are to 11 U.S.C. unless otherwise indicated.

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

. . . .

(4)(B) In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

The key questions are whether the professional services were necessary and beneficial to the bankruptcy estate and whether the fees charged for those services are reasonable in amount. *In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993); *In re Schupbach Investments, LLC*, 2014 WL 6680122, at *8 (10th Cir. BAP.); *see also In re KOBA Limited Partnership*, 2019 WL 5584901, at *3 (Bankr. D.N.M.) (citing additional authority for same proposition). In chapter 12 and 13 cases, the benefit can be to the debtor rather than the estate. *See, e.g., In re Williams*, 378 B.R. 811, 823 (Bankr. E.D. Mich. 2007) (§ 330(a)(4)(B) is an exception to the general rule that professionals' services must benefit the estate to be compensable); *In re Argento*, 282 B.R. 108, 116 (Bankr. D. Mass. 2002) (same).

B.      Debtors' Objections to the Fee Application.

Debtors do not directly challenge the necessity of Daniels' work or the reasonableness of his fees. Instead they argue, inter alia:

The attorney did not protect the client's interests by not conveying the offer to settle from a. [Debtors' second bankruptcy] Attorney [Ron] Holmes in the amount of $7500 b. Did not want to offer the $75000 settlement to Alicia Garcia until the

clients stated they would do it themselves c. Did not want to approach the IRS to get a new amount due which after constant urging, he finally did approach the IRS which reduced the amount of claim from $400k plus to $44k. d. Attorney has not approached other creditors to offer a settlement. e. in Interrogatories' with Alicia Garcia, attorney refused to cross examine on video tape, which places the clients at a disadvantage f. refused to offer Navy Federal [Credit Union] the vehicle returned in lieu of claim.[9]

Giving Debtors the benefit of the doubt, the Court construes their objection as an assertion that Daniels' work was not necessary or reasonable because he took actions contrary to their wishes and interests. The objection must be overruled.

Based on a review of Daniels' fee application and the docket in this case, the Court concludes that Daniels' work was necessary. Daniels communicated frequently with Ron Holmes, the IRS's counsel, Ms. Garcia's counsel, the chapter 13 trustee, and Debtors. Through Daniels' efforts, the Garcia dispute was resolved, the IRS claim was greatly reduced, the dispute with Ron Holmes was adjudicated, and Debtors filed an amended plan that can be confirmed with a very minor payment adjustment. In large part because of Daniels' efforts, this case should be successful.

At this point in the case, Debtors may not need to retain new counsel. They can get their plan confirmed simply by working with the chapter 13 trustee, who has indicated on the record a willingness to assist Debtors through the final confirmation process. Given Debtors' difficulty working with lawyers, this might be the best course to take, if they can deal reasonably with the trustee. Alternatively, debtors can retain new counsel or, if they choose, dismiss their case. *See* § 1307(b) ("On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.").

C.      The *Johnson* and § 330(a)(3) Factors.

---

[9] Given how displeased Debtors appear to be with Daniels' representation, it seems strange to the Court that Debtors objected to his motion to withdraw.

-6-

Case 19-10540-t13    Doc 179    Filed 08/20/20    Entered 08/20/20 16:03:09 Page 6 of 10

Section 330(a)(3) lists six factors to consider when evaluating the reasonableness of fees. The Tenth Circuit has taken into consideration other factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See In re Market Center East Retail Property, Inc.*, 730 F.3d 1239, 1249 (10th Cir. 2013) ("[B]ankruptcy court[s] must consider the § 330(a)(3) and *Johnson* factors in evaluating whether a proposed fee amount is reasonable"). The *Johnson* factors are:

    (1) The time and labor required;
    (2) The novelty and difficulty of the questions;
    (3) The skill requisite to perform the legal service properly;
    (4) The preclusion of other employment due to acceptance of the case;
    (5) The customary fee;
    (6) Whether the fee is fixed or contingent;
    (7) Time limitations imposed by the client or the circumstances;
    (8) The amount involved and the results obtained;
    (9) The experience, reputation, and ability of the attorneys;
    (10) The "undesirability" of the case;
    (11) The nature and length of the professional relationship with the client; and
    (12) Awards in similar cases.

*Market Center East*, 730 F.3d at 1247; *KOBA*, 2019 WL 5584901, at \*4; *Hungry Horse*, 2017 WL 3638182, at \*3. The Court weighs the § 330(a)(3)/*Johnson* factors as follows:

| Factor | Discussion |
|---|---|
| § 330(a)(3)(A): Time spent | Daniels billed 46.2 hours in this case (he did not charge for about 3 hours of his time, spent at the beginning and end of the case). At his billing rate, this equals $11,250. The fees for a "typical" chapter 13 case are about $5,000. This case, however, is not typical. Daniels settled a fee dispute with Debtors' first bankruptcy attorney, represented Debtors in their objection to their second attorney's fee application, prepared and filed an amended plan, deposed a witness, substantially reduced the IRS claim, and settled Debtors' dispute with the Ms. Garcia. Daniels communicated frequently with Debtors by email. For this work, Daniels' time spent was reasonable. |
| § 330(a)(3)(B): Rates charged | Daniels charged $250 per hour for his time. He charged $200 per hour for work done prior to October 2019. Given Daniels' experience, his rate is reasonable. |

| § 330(a)(3)(C): Necessary/beneficial | The work Daniels performed was necessary and beneficial to the estate and/or Debtors. Daniels took the steps needed to create a viable chapter 13 plan. |
|---|---|
| § 330(a)(3)(D): Timeliness | While it is unfortunate that Debtors do not have a confirmed plan 17 months into their bankruptcy, the delay was not Daniels' fault. Daniels' work has been timely. |
| § 330(a)(3)(E): Skill/experience | Daniels has been practicing bankruptcy law for over 30 years. He has the skill to handle this case. |
| § 330(a)(3)(F): Customary compensation in non-bankruptcy cases | Daniels' rates are comparable to, or lower than, attorneys with his level of experience practicing outside bankruptcy. |
| *Johnson* factor ("JF") 1: Time and labor required? | As stated above, the time spent on the case was reasonable. |
| JF 2: Novelty and difficulty of the questions? | The issues in the bankruptcy and adversary proceeding were somewhat difficult to resolve, probably in no small part due to the familial nature of the underlying dispute. |
| JF 3: Skill requisite to perform the legal service properly? | Daniels has the skill to handle this case. |
| JF 4: Preclusion of other employment due to acceptance of the case? | There is no evidence that the representation precluded Daniels from taking other work, but time spent on this case was time Daniels was unable to spend on other clients or prospective clients. |
| JF 5: Customary fee? | It is customary to charge chapter 13 debtors by the hour, which Daniels did. His hourly rate is customary. |
| JF 6: Whether the fee is fixed or contingent? | Daniels' fee is not contingent. |
| JF 7: Time limitations imposed by the client or circumstances? | There were no pressing deadlines when Daniels took over the case from previous counsel. |
| JF 8: Amount involved and results obtained? | Debtors still do not have a confirmed plan, but Daniels has put in the work to get Debtors most of the way there. The adversary proceeding against Debtors and the outsized claims filed by Ms. Garcia have been settled or dismissed. The IRS claim has been substantially reduced. Without Daniels' work, Debtors likely would not have a confirmable plan. |
| JF 9: Experience, reputation, and ability of the attorneys? | Daniels is experienced and able. He has an excellent reputation as a consumer bankruptcy lawyer. |
| JF 10: Undesirability of the case? | Given the difficulty Mr. Cline and Mr. Holmes had with Debtors, the Court concludes that this case was undesirable when Daniels entered his appearance. |
| JF 11: Nature and length of professional relationship with the client? | Not applicable. |

| JF 12: Awards in similar cases? | Typical chapter 13 cases cost about $5,000. More difficult cases cost more. The Court finds that the fees Daniels charged in this case are comparable to fees charged by debtor's counsel in cases of similar complexity. |
|---|---|

The *Johnson*/§ 330(a)(3) factors weigh decidedly in favor of allowing Daniels' fee application in the amount of $11,250 (fees), $885.94 (gross receipts tax), and $395.85 (costs), for a total allowance of $12,531.79. The approved fees and expenses will have an administrative expense priority.

### III. CONCLUSION

This has been a difficult chapter 13 case. Some of the difficulty must be attributed to Debtors; it is very unusual to have three good bankruptcy lawyers file motions to withdraw in one case. Nevertheless, Debtors have made a lot of progress toward confirmation of a chapter 13 plan and should achieve that result shortly if they are able to work with the chapter 13 trustee. Much of this progress is attributable to Daniels. Overall, the work he did was necessary and his fees reasonable. The Court will enter a separate order consistent with this opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: August 20, 2020

Copies to: Counsel of Record

Stephen and Roberta Guajardo
P.O. Box 602
Belen, NM 87002-0602